### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **CLAVON MARTIN**, | **CIVIL ACTION** |
| Plaintiff, | |
| v. | **NO. 20-3715-KSM** |
| **BRYAN BUONO, et al.**, | |
| Defendants. | |

### <u>MEMORANDUM</u>

**MARSTON, J.**                                                                                                April 15, 2021

      Plaintiff Clavon Martin alleges that Defendants Bryan and Bernadette Buono negligently left a skateboard in their driveway, causing him to fall and injure himself while delivering their groceries on the evening of October 22, 2019.  (Doc. Nos. 1, 18.)  Nearly a month after the expert report deadline expired, Martin requested a 90-day extension of expert report and discovery deadlines.  (*See* Mar. 1, 2021 Ltr. from Brandon Silverman, Esq. to Judge Marston.) Defendants opposed the request.  (*See* Mar. 3, 2021 Ltr. from William Thrall, Esq. to Judge Marston.)  After holding a status conference with the parties on March 8, 2021, the Court ordered Martin to file a formal motion.  (Doc. No. 16.)

      In his motion, Martin claims that he should be given more time to furnish an expert report and conduct discovery because he needs a third surgery, which has not been scheduled due to ongoing issues regarding the denial of benefits in his workers' compensation case, a separate matter.  (*See* Doc. Nos. 18, 18-2.)  Martin argues that "[i]n order to get an accurate picture of [his] actual damages, [his] medical treatment needs to be complete and/or removing numerous unknowns as to plaintiff's future medical recovery."  (Doc. No. 18-2 at p. 4.)  Defendants oppose

Martin's motion, arguing that it is untimely, that Plaintiff's counsel was not diligent, and that they will be prejudiced if the expert report deadline is reopened. (*See* Doc. No. 29.)

For the reasons discussed below, the Court will grant Martin's motion.

## I.   Factual Background and Procedural History

Martin, an InstaCart driver/deliverer, alleges that he tripped and fell while delivering groceries to Defendants' property on the evening of October 22, 2019, resulting in injuries—specifically, a ruptured quadriceps tendon in his left leg. (*See* Doc. No. 18 at ¶¶ 1–4; Doc. No. 18-2 at p. 2; Doc. No. 19 at ¶ 1.)

A few months after the incident, on January 20, 2020, Martin had an initial surgery to repair his quadriceps tendon. (*See* Doc. No. 19 at pp. 21, 33, Ex. A.) Martin spent the next two months recovering; then, from March 18 to April 10, he underwent post-operative rehabilitation at Pivot Physical Therapy. (Doc. No. 18 at ¶ 6.) On April 16, Martin had an appointment with First State Orthopaedics and his orthopedist determined that a second surgery was necessary to improve his range of motion. (*Id.* at ¶ 8; Doc. No. 19 at p. 21; *see also id.* at p. 33, Ex. A.) The second surgery was delayed due to the COVID-19 pandemic and did not take place until a couple of months later, on June 16, 2020. (Doc. No. 18 at ¶ 9; *see also* Doc. No. 19 at p. 36, Ex. B (operative report signed June 23, 2020).)

Shortly thereafter, Martin's surgeon prepared an operative report, in which he described the procedure performed. (Doc. No. 19 at p. 36, Ex. B) In the report, Martin's surgeon indicated that he "tried mobilizing the quad itself to allow for more mobility and this was unsuccessful." (*Id.*) The surgeon also noted, "we talked about [Martin] returning to the surgical suite for evaluation under anesthesia and re-manipulation." (*Id.*)

After his surgery, Martin had a follow-up appointment at First State Orthopaedics on

June 26, 2020, during which he was examined. (*See* Doc. No. 19 at p. 38, Ex. C.) According to the orthopedist's paperwork summarizing the visit:

> Dr. Leitman came and discussed the option of an open capsulotomy and possible VY-plasty for possible improvement of his symptoms. We did discuss that there is a possibility that he may not have improvement even after this procedure due to the extent of his adhesions. Patient understands and will think about it. He will call back for a surgical write up if he chooses to move forward.

(*Id.*)

Martin had a MRI on October 14, 2020, which revealed partial tearing in his quadriceps tendon. (Doc. No. 18 at ¶ 11.)

\* \* \*

On July 30, 2020—about a month and a half after his second surgery—Martin initiated the instant lawsuit. (Doc. No. 1.) This Court held a preliminary pretrial conference and issued an initial Scheduling Order on September 2, 2020. (Doc. No. 7.) The Court issued an Amended Scheduling Order on November 24, 2020, after granting Defendants' motion to compel Plaintiff to sign authorizations for his medical records. (Doc. No. 11.) The Amended Scheduling Order set a deadline of March 16, 2021 for fact discovery, February 5, 2021 for expert reports, and February 26, 2021 for rebuttal expert reports. (*Id.* at ¶¶ 1–2.) On November 2, 2020, Plaintiff's counsel indicated to defense counsel that Martin "is waiting on having his 3rd surgery scheduled." (Doc. No. 18-4.)

In early December 2020, Martin learned that the workers' compensation insurance company for InstaCart, Atlantic Specialty Insurance Company—which had been providing Martin with medical benefits thus far—intended to deny payment for any further medical treatment. (Doc. No. 18 at ¶ 12.) Martin subsequently hired another attorney, Jeffrey Gross, Esq., to represent him in his workers compensation case. (*Id.* at ¶ 14.)

Defendants took Martin's deposition on January 13, 2021. Martin testified that he

3

"cannot run," "cannot jump," "cannot go up and down stairs without any sort of need for assistance," "cannot walk for long periods of time . . . or any length of an extended distance," and "cannot use the bathroom in the same manner in which [he used] it before."  (Doc. No. 18-3 ("Martin Dep. Tr.") at 172:17–173:6.)  When asked "I know you told us that currently there's nothing on the books, but is it your plan to have that third surgery," Martin responded:  "It is my plan, my hope, my dream to have the third surgery to hopefully be able to at least manage steps and at least jog or run."  (*Id.* at 202:6–11; *see also id.* at 56:19–23.)

On the deadline for expert reports, February 5, 2021, Defendants served their medical expert's report on Martin.  (Doc. No. 19 at p. 22.)  Martin, however, did not submit any expert reports, or even identify potential experts, and to date, has not done so.  (*Id.*)

Rather, Plaintiff's counsel waited until March 1, 2021 to contact the Court to inform it that Martin wanted to produce an expert report and could not do so until after his third surgery.  (*See* Mar. 1, 2021 Ltr. from Brandon Silverman, Esq. to Judge Marston.)  At that time, Plaintiff's counsel stated that the third surgery had not been scheduled due to the pending workers' compensation case, for which mediation was scheduled for April 5, 2021.  (*Id.* at ¶ 17.)  Defendants' counsel objected to Martin's request, as the deadline for expert reports had closed almost a month earlier.  (*See* Mar. 3, 2021 Ltr. from William Thrall, Esq. to Judge Marston.)

On March 8, 2021, the Court held a status conference with the parties and subsequently, Martin filed his Motion for Extension of Time to Complete Discovery.  (Doc. No. 18.)  Defendants filed their opposition on March 17.  (Doc. No. 19.)

On April 14, 2021, Plaintiff's counsel informed the Court that Martin's workers' compensation case settled and that Martin's third surgery is scheduled for April 26, 2021.  (*See* April 14, 2021 Ltr. from Brandon Silverman, Esq. to Judge Marston.)  In this supplementaruy

letter, Plaintiff's counsel reiterated his request for the reopening of the expert report deadline and an extension of the fact discovery deadline. (*See id.*) The following day, Defendants' counsel submitted a letter, in which Defendants continued to oppose Plaintiff's request. (*See* April 15, 2021 Ltr. from William Thrall, Esq. to Judge Marston.)

**II.     Standard of Review**

Federal Rule of Civil Procedure 16(b) instructs that "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4); *see also Premier Comp Sols., LLC v. UPMC*, 970 F.3d 316, 318 (3d Cir. 2020). A critical factor in the Rule 16 "good cause" analysis is "the diligence of the party seeking the extension." Fed. R. Civ. P. 16(b) advisory committee's note to 1983 amendment; *see also Premier Comp Sols., LLC*, 970 F.3d at 319 ("[W]hether 'good cause' exists under Rule 16(b)(4) depends in part on a plaintiff's diligence."); *Hansen v. Speedway*, Civil Action No. 19-3174-KSM, 2021 WL 254555, at *2 (E.D. Pa. Jan. 26, 2021). "Carelessness, or attorney error . . . is insufficient to constitute 'good cause' under Rule 16(b)." *Chancellor v. Pottsgrove Sch. Dist.*, 501 F. Supp. 2d 695, 701–02 (E.D. Pa. 2007) (citations omitted); *see also Banks v. City of Philadelphia*, 309 F.R.D. 287, 290–91 (E.D. Pa. 2015); *Hazerci v. Tech. Ed. Servs., Inc.*, Civil Action No. 08-1092, 2009 WL 1515742, at *1 (E.D. Pa. May 29, 2009).

Even if good cause does not exist under Rule 16, if the result of not granting Martin's motion is to exclude "critical evidence" that could be provided by Martin's expert, we must consider the so-called *Pennypack* factors in evaluating whether to allow Martin to submit an expert report. *See ZF Meritor, LLC v. Eaton Corp.*, 696 F.3d 254, 297–98 (3d Cir. 2012); *Konstantopoulos v. Westvaco Corp.*, 112 F.3d 710, 719 (3d Cir. 1997); *Hansen*, 2021 WL 254555, at *3; *Ewing v. Cumberland County*, Civil No. 09-5432, 2014 WL 3974159, at *7

5

(D.N.J. July 16, 2014). Those factors are: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified' [or the excluded evidence would have been offered]; (2) the ability of that party to cure the prejudice;" (3) the extent to which allowing such witnesses or evidence "would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's [scheduling] order." *Konstantopoulos*, 112 F.3d at 719 (quoting *Meyers v. Pennypack Woods Home Ownership Ass'n*, 559 F.2d 894, 904–05 (3d Cir. 1977); *see also ZF Meritor, LLC*, 696 F.3d at 298. The Court must also consider "the importance of the excluded testimony." *Konstantopoulos*, 112 F.3d at 719 (quoting *Pennypack*, 559 F.2d at 904). The Third Circuit has cautioned that "the exclusion of critical evidence is an extreme sanction, not normally to be imposed absent a showing of willful deception or flagrant disregard of a court order by the proponent of the evidence." *Konstantopoulos*, 112 F.3d at 719 (cleaned up).

**III.     Discussion**

    *A.  Good Cause Under Rule 16*

We first address whether Martin has demonstrated good cause under Rule 16 for his delay in filing his motion, given that he waited until nearly a month after the expiration of the expert report deadline to notify the Court that because of issues in Martin's workers' compensation case, Martin had not yet had his third surgery and would require a medical expert after the third surgery is completed.[1] The Court finds that Martin has failed to demonstrate good

---

[1] In his motion, Martin largely relies on *Goldrich v. City of Jersey City*, Civil Action No. 15-886 (SDW) (LDW), 2018 WL 3360764 (D.N.J. July 10, 2018) and *Nike, Inc. v. E. Ports Custom Brokers, Inc.*, Civil Action No. 11-4390 (CCC), 2019 WL 5206073 (D.N.J. Oct. 16, 2019). But Martin's heavy reliance on *Goldrich* and *Nike* strains credulity, because in each case, the court found that the moving party *failed to demonstrate the requisite good cause under Rule 16*. *See Goldrich*, 2018 WL 3360764, at *2–3 (denying the plaintiff's motion to reopen discovery and for reconsideration); *Nike*, 2019 WL 5206073, at *4 (noting that the plaintiff had not been diligent in pursuing relevant discovery and "find[ing] that Plaintiff has not shown good cause to reopen discovery" and denying the plaintiff's motion to conduct limited expedited

cause here.

Martin has not been diligent in complying with the discovery deadlines in this case. Diligence requires a party to timely act on information that it has in its possession. *See Price v. Trans Union, LLC*, 737 F. Supp. 2d 276, 279–80 (E.D. Pa. 2010).  Plaintiff's counsel argues that he has "diligently kept defense counsel appraised of plaintiff's medical condition throughout the life of this matter," noting that he first notified defense counsel of the need for a third surgery in November 2020 and claiming that Plaintiff "himself confirmed the need for a third surgery during his deposition" in January 2021.[2] (No. 18-2 at pp. 5–6.)  But Plaintiff's counsel misses the point.  That Plaintiff's counsel informed defense counsel that Martin needed a third surgery months prior to the expert report deadline has no bearing on the diligence inquiry; *Plaintiff* brought this action, and *Plaintiff* allowed the expert report deadline to expire—and nearly a month to pass—before seeking an extension.  Moreover, Martin has known at least since December 2020 that the third surgery was not imminent and that, as a result, the expert report deadline would need to be extended, yet failed to alert anyone to that issue.  This is presumptively not diligent.  *Accord Price*, 737 F. Supp. 2d at 280 ("Where, as here, the party knows or is in possession of the information that forms the basis of the later motion to amend at the outset of the litigation, the party is presumptively not diligent."); *Chancellor*, 501 F. Supp. 2d at 702.

To that end, courts find that parties are not diligent where, as here, a party had ample notice of an issue and nonetheless delayed in filing their motion on that issue.  *See, e.g.*, *Ferencz*

---

discovery).

[2] Plaintiff's counsel mischaracterizes Plaintiff's testimony—Plaintiff did not explicitly state he needs the third surgery or even that he planned to imminently schedule the surgery; rather, he testified that "[i]t is [his] plan, [his] *hope*, [his] *dream* to have the third surgery to hopefully be able to at least manage steps and at least jog or run."  (Martin Dep. 202:6–11 (emphasis added).)

7

*v. Medlock*, Civil Action No. 11-1130, 2013 WL 6230626, at *3 (E.D. Pa. Dec. 2, 2013) (finding that the plaintiff had not demonstrated "good cause" for the court to amend its scheduling order and permit the plaintiff to amend the complaint, where the plaintiff knew she intended to amend the complaint to include a deliberate indifference claim based on a delay in administering CPR yet waited seven months to move to do so); *Chancellor*, 501 F. Supp. 2d at 703 (holding that there was no good cause to modify the scheduling order and denying motion for leave to amend answer to add a statute of limitations affirmative defense where the defendant "possessed the relevant knowledge on which to base [that] defense at the outset of the litigation and has not proposed a clear and cognizable justification for the five-month delay beyond the time set forth in the scheduling order"); *Hansen*, 2021 WL 254555, at *3 (finding a lack of good cause to modify the scheduling order under Rule 16(b) in a slip-and-fall case because the defendant had been on notice since the date the complaint was filed that the plaintiff "intended to introduce evidence that her injury had ongoing ill effects" yet "waited until *after* the close of expert and fact discovery to even broach the subject" of the plaintiff undergoing an independent medical evaluation).

      The record is clear that in mid-to-late June 2020, shortly after Martin's second surgery *and a month before Martin filed his complaint in this Court*, Martin was on notice that he may need a third surgery. (*See, e.g.*, Doc. No. 19, Ex. B ("Regardless, we talked about him returning to the surgical suite . . ."); Ex. C ("Dr. Leitman came and discussed the option of an open capsulotomy and possible VY-plasty for possible improvement of his symptoms . . . Patient understands and will think about it. He will call back for surgical write up if he chooses to move forward.").) Thus, Martin was arguably on notice as far back as June 2020 that his second surgery was unsuccessful and that the full extent of his damages may not be solidified until after

a third surgery occurred.[3]

Further, Martin's complaint illustrates that he was aware that the physical injuries he suffered as a result of Defendants' alleged negligence are the heart of this matter. (*See, e.g.*, Doc. No. 1 at ¶ 13 ("As a result of this fall, plaintiff suffered serious and permanent injuries, including, but not limited to surgery to repair a torn quadriceps tendon, and other orthopedic, neurological, and psychological injuries that have yet to be fully determined."); *id.* at ¶ 19 ("As a further result of this accident, plaintiff has been obligated to receive medical attention and care for his injuries[.]"); *id.* at ¶ 22 ("As a further result of this accident, plaintiff has suffered severe physical pain, aches, fear, mental anguish, humiliation, inconveniences, and loss of life's pleasures, and will continue to suffer the same for an indefinite time in the future.").) Plaintiff's counsel also explicitly acknowledged the need to have an expert for damages in the parties' joint Rule 26(f) report. (*See* Doc. No. 6 at p. 2 ("Both parties anticipate the need for experts to opine as to the specific issues related to liability and damages.").)

Martin attempts to excuse his delay in seeking a modification to the Amended Scheduling Order by pointing to issues that arose concerning the denial of his medical benefits. (*See* Doc. No. 18-2 at pp. 3–4 ("[P]laintiff's third surgery has not been rescheduled due to his ongoing worker compensation case[.]"); *id.* at p. 5 ("[P]laintiff's third surgery has not taken place and has been held up [sic] to the insurance company for his employer denying the continuing payment of medical benefits.").) Yet, this excuse fails to explain why Martin did not immediately notify the

---

[3] Any allusion that Plaintiff's counsel makes regarding not knowing of the potential need for a third surgery until the October 14, 2020 MRI is disingenuous and misleading. (*See* Doc. No. 18-2 ("Due to the plaintiff's continued limitations, another MRI was ordered and then conducted on October 14, 2020. This second MRI revealed partial tearing in his surgically repaired quadriceps tendon.").) As the Court has noted *supra*, Plaintiff's surgeon represented that the second surgery was unsuccessful and that a third surgery may be required back in June 2020.

Court of these issues *prior* to the expiration of the expert report deadline.

The fact that Martin's third surgery was not scheduled at the time of Martin's deposition in January 2021, coupled with the fact that Martin was having issues in his workers' compensation case in December 2020, should have put Martin on notice that he might not be able to have a medical expert prepare a report within the remaining discovery time period. At that time, or at least prior to the expiration of the expert report deadline, a diligent attorney would have notified opposing counsel of the potential necessity for an extension of the expert report deadline. The number of surgeries needed and the denial of benefits is irrelevant to Martin's failure to timely file a motion for an extension of time once it became apparent that such a motion was necessary.

Inexplicably, Martin waited, and we cannot find that Martin has demonstrated circumstances sufficient to constitute good cause pursuant to Fed. R. Civ. P. 16(b)(4).[4]

### B. *Exclusion of Critical Evidence*

Although Martin has failed to show good cause under Rule 16, the Court must also consider the effect denying Martin's motion would have under the standard governing exclusion of experts. We must do so because denying Martin's motion would have the "practical effect of . . . exclu[ding] . . . certain expert testimony." *See, e.g.*, *ZF Meritor, LLC*, 696 F.3d at 297–98; *see also Krauss v. IRIS USA, Inc.*, Civil Action No. 17-778, 2019 WL 2268975, at *2 n.3 (E.D. Pa. May 24, 2019) (noting that "the standard governing the exclusion of untimely expert reports differs from the standard governing untimely motions," with the "former focus[ing] primarily on

---

[4] During the status conference the Court held on March 8, 2021, Plaintiff's counsel acknowledged his mistake and apologized, explaining that he had the overall discovery deadline in mind and had confused that deadline and the earlier expert report deadline. However, as noted *supra*, "[c]arelessness, or attorney error . . . is insufficient to constitute 'good cause' under Rule 16(b)." *Chancellor*, 501 F. Supp. 2d at 701–02; *Banks*, 309 F.R.D. at 290–94; *Hazerci*, 2009 WL 1515742, at *1.

10

prejudice").

The Court must assess: "(1) the prejudice or surprise in fact of the party against whom the excluded witnesses would have testified [or the excluded evidence would have been offered]; (2) the ability of that party to cure the prejudice;" (3) the extent to which allowing such witnesses or evidence "would disrupt the orderly and efficient trial of the case or of other cases in the court; and (4) bad faith or willfulness in failing to comply with the district court's [scheduling] order." *Konstantopoulos*, 112 F.3d at 719 (quoting *Pennypack*, 559 F.2d at 904–05); *see also Pansini v. Trane Co.*, Civil Action NO. 17-3948, 2019 WL 1299036, at *3 (E.D. Pa. Mar. 21, 2019)  The Court must also evaluate the "importance of the evidence, which is "the most significant" consideration.  *ZF Meritor, LLC*, 696 F.3d at 298.

*Pansini v. Trane Company* is instructive.  There, the defendants filed a motion for summary judgment on plaintiffs' breach of warranty and breach of contract claims, both of which pertained to an allegedly defective heating and air conditioning ("HVAC") system in their home.  2019 WL 1299036, at *1.  This prompted the plaintiffs to file an untimely expert report to support their claims that the HVAC system was defective.  *Id.*  The plaintiffs did not obtain leave from the court before doing so, and the defendants argued that the expert report should be excluded.  *Id.*

In its analysis, the court examined the current landscape of the case law in this Circuit and the factual circumstances in which courts allow expert reports versus excluding them.  First, the court observed that "[c]ourts in this district faced with similarly untimely expert reports at the summary judgment stage have postponed summary judgment, extended discovery, and given the prejudiced party time to depose the untimely disclosed expert and/or find an expert of their own." *Id.* at *4 (collecting cases).  "In contrast, courts have excluded untimely disclosed expert

reports when faced with a rapidly approaching, set trial date, or where there were aggravating circumstances including bad faith. *Id.* (collecting cases).

Despite the plaintiffs' "unjustifiable delay" in filing their expert report, the *Pansini* court declined to exclude the report. *Id.* at *5–6. The court explained that the importance of the evidence weighed in favor of allowing the expert report to come in, because the plaintiffs had "no other expert evidence concerning the HVAC System's alleged defects; consequently, excluding [the expert] report would result in the dismissal of their claims. Such an extreme sanction is disfavored." *Id.* at *6 (citation omitted). In addition, the court emphasized that "[a]lthough [the plaintiffs] failed to act responsibly, there [was] no evidence that [the plaintiffs] sought to willfully deceive the Court or the defendants or that they acted in a bad faith attempt to gain a tactical advantage, rather than, for example, to cure a slip-up," which also weighed in favor of not excluding the expert report. *Id.* (citation omitted). Next, the court found that any prejudice the defendants faced—such as being unable to depose the plaintiffs' expert before filing their summary judgment motion and finding a rebuttal expert—could be "cur[ed] by granting the defendants additional time with which to respond in full to the expert's report, depose the expert, or obtain their own expert." *Id.* (cleaned up). Last, while such "relief certainly [would] prolong the case," the court concluded that admitting the expert report would "not unduly disrupt" the case going to trial because no trial date had been set yet. *Id.* Therefore, all of the factors weighed in favor of admitting the untimely expert report.

We are persuaded by the *Pansini* court's reasoning and find it equally applicable here.

First, we observe that given the ongoing COVID-19 pandemic, civil jury trials have yet to resume in the Eastern District of Pennsylvania, and therefore there is no pending trial date at this time. Moreover, it does not appear that Defendants were caught by surprise that Martin intended

to have a medical expert on damages, given that the parties jointly submitted as much in their Rule 26(f) report.  (*See* Doc. No. 6 at p. 2.)

Defendants argue that they would be "severely prejudiced" if Martin were allowed to identify an expert witness after the deadline for expert reports has passed.  (*See, e.g.*, Doc. No. 19 at ¶ 43 ("Specifically, due to Plaintiff's failure to produce any expert reports, Defendants refrained from conducting certain expert discovery which, absent the production of any expert reports by Plaintiff, was deemed unnecessary and/or warranted.  Allowing Plaintiff an extension of time to remedy his omission would delay the continued prosecution of this matter and harm the Defendants[.]"); *id.* at ¶ 51 ("[T]he reopening of discovery would delay the resolution of this matter, cause Defendants more time and aggravation, result in further fees and costs expended by Defendants [sic] counsel[.]").)  However, the Court concludes that any prejudice related to the ability of Defendants to conduct certain expert discovery that it has abstained from can be cured by this Court.  To this end, the Court will allow Defendants the opportunity to depose Plaintiff's expert and offer a rebuttal report, as well as do their own supplementary expert discovery, if necessary.  *See, e.g.*, *Pansini*, 2019 WL 1299036, at *6.[5]

In addition, given the current Standing Order continuing all civil jury trials in the Eastern District of Pennsylvania—and that there is currently no trial date set and the previously scheduled trial date (June 17, 2021) was well over three months away at the time Plaintiff filed

---

[5] The Court also notes that Defendants filed a motion for summary judgment on March 30, 2021 (*see* Doc. No. 20), pursuant to this Court's November 24, 2020 Scheduling Order (*see* Doc. No. 11) and after Martin had filed his motion for a modification of that Scheduling Order.  On March 30, 2021, this Court suspended the deadlines in the November 24, 2020 Scheduling Order and stated that "[i]n the event the Court grants the extension for discovery, the Court will deny Defendants' Motion for Summary Judgment (Doc. No. 20) as moot and allow counsel to refile at a date to be determined."  (Doc. No. 21.)  However, the current existence of a summary judgment motion does not alter the Court's analysis or compel us to find that Defendants would be prejudiced for that reason.  *See, e.g.*, *Pansini*, 2019 WL 1299036, at *6 (admitting the plaintiffs' untimely expert report where the defendants had already briefed their summary judgment motion and finding that any prejudice could be cured).

this motion—the Court cannot plausibly find that Defendants would be prejudiced by any delay caused by our reopening of the expert report deadline. *See, e.g.*, *White v. Beaver County*, 2:17-cv-00998, 2019 WL 5395212, at *2–3 (W.D. Pa. Oct. 22, 2019) (denying the motion to strike the plaintiff's untimely expert report where the "matter has not been scheduled for trial" and was not "likely to be tried in the next few months"); *Robins v. Nationwide Mut. Ins. Co.*, Civil Action No. 3:12-CV-02034, 2013 WL 6191953, at *5 (M.D. Pa. Nov. 26, 2013) ("[T]he Court finds that although Defendant would be clearly prejudiced by Plaintiffs' late expert witness disclosure, there is time to cure the prejudice, particularly since the case has not been set for trial[.]"); *Rivera v. Lehigh County*, Civil Action No. 13-cv-04748, 14-cv-03883, 2015 WL 12819147, at *1 n.8 (E.D. Pa. Oct. 9, 2015) (denying the defendants' motions to exclude the plaintiff's untimely expert reports because the plaintiff's expert reports were submitted more than four months prior to the trial date, "lessen[ing] any prejudice suffered by defendants").

      We do find that Martin's counsel was less than diligent in pursuing an extension of deadlines, and was inexcusably negligent in failing to abide by the Court's Scheduling Order. However, there is not any evidence leading this Court to believe that Plaintiff's counsel acted in bad faith. Indeed, during the March 8, 2021 status conference, Plaintiff's counsel apologized and explained that it was an honest mistake, as he had conflated the expert report deadline with the general discovery deadline. Even defense counsel acknowledges that Plaintiff's counsel admitted this was "a learning lesson." (*See* Doc. No. 19 at p. 24.)

      Significantly, the Court is compelled to conclude that Martin would be severely prejudiced if he were not given the opportunity to provide an expert report after his third surgery. To state a negligence claim in Pennsylvania, a plaintiff must prove: (1) the existence of a duty or obligation recognized by law; (2) a breach of that duty; (3) a causal connection between the

breach and the resulting injury; and (4) actual loss or damage.  *Howard v. Wal-Mart Stores, Inc.*, Civil Action No. 08-1736, 2009 WL 1688474, at *3 (E.D. Pa. June 16, 2009) (citing *Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 27 (Pa. 2006)).  Martin's request for the reopening of the expert report deadline—and specifically, to allow time for Martin to have his third surgery (now scheduled for April 26, 2021), and a medical expert proffer a report based on his condition after he recovers from that surgery—relates to the final element:  damages.  Specifically, Martin argues that his "need for a third surgery is of paramount importance," that his "current condition with respect to his damages would paint an incomplete picture to the jury, and would severely prejudice [him]," and that "[w]ithout having completed medical treatment, plaintiff's damages cannot be accurately evaluated by the parties or the jury." (Doc. No. 19 at p. 7.)  We agree.  A report after the third surgery could influence a fact finder's analysis of the quantum of Martin's damages, particularly given the unsuccessful nature of the second surgery.

      Taken together, the Court finds that all of the *Pennypack* factors weigh in favor of granting Plaintiff's untimely motion for an extension and reopening the expert report deadline.  Our conclusion is supported by the case law of this Circuit.  *See, e.g.*, *Pansini*, 2019 WL 1299036, at *4–6; *White*, 2019 WL 5395212, at *2–3 (finding that the "draconian measure" of striking the plaintiff's untimely expert report was not required where the matter was unlikely to go to trial in the next few months and where the late filing "appear[ed] to be result of an honest mistake"); *Rivera*, 2015 WL 12819147, at *1 n.8 (denying the defendants' motions to exclude the plaintiff's untimely expert reports because the plaintiff's expert reports were submitted more than four months prior to the trial date, "lessen[ing] any prejudice suffered by defendants," the plaintiff did not "appear to have engaged in any willful deception or pattern of late filings," and the plaintiff alleged that "the expert reports [were] important to establish certain portions of her

case"); *Alberts v. Bumgardner,* Civil Action No. 13-5538, 2018 WL 5294512, at *2 (D.N.J. Oct. 25, 2018) (granting the plaintiff's motion to reopen discovery for the limited purpose of allowing the plaintiff's experts to supplement their expert reports because "no trial date has been set" and "there is no evidence leading the Court to believe that Plaintiff's request is motivated by bad faith"); *cf. Perez v. Great Wolf Lodge of the Poconos LLC*, 3:12-CV-01322, 2017 WL 559704, at *6 (M.D. Pa. Feb. 10, 2017) (excluding expert report where "Plaintiffs would be prejudiced and/or surprised by having to respond to five untimely expert reports on the eve of a complex trial and in the midst of trial preparation" and the court would be unable to cure such prejudice "insofar as the court [was] unwilling to . . . postpon[e] the trial, which had been set for quite some time," and where the case had been pending for nearly five years and the court had already granted seven extensions[6] of the case management deadlines).

## IV. Conclusion

Martin has failed to show good cause for his failure to comply with the expert report deadline. However, because the Court finds that excluding critical evidence such as a medical expert report in this case would severely prejudice Martin, that the Court can cure the prejudice caused to Defendants by the reopening of expert discovery, that reopening expert discovery will not disrupt or prolong the case given that no trial date is presently set, and that Martin did not act in bad faith, we will grant Martin's motion.[7]

---

[6] The Court has only granted one prior extension in this case (*see* Doc. No. 11), and this action has been pending for less than a year. That said, the Court would be remiss if we failed to call attention to Plaintiff's mischaracterization on this point. Although it is true that the Court granted "Defendants' unopposed request for an extension of the deadlines listed in the Court's [initial] Scheduling Order" (Doc. No. 11), Plaintiff's counsel omits the crucial fact that such an extension was necessitated by his client's failure to timely sign the necessary authorization forms for his medical records, creating a "discovery impasse" that forced the Defendants to file a motion to compel (*see* Doc. No. 10).

[7] The Court will also extend the fact discovery deadline by 90 days, in light of Chief Judge Juan R. Sánchez's current Standing Order in the Eastern District and the fact that, as of the date of this

16

An appropriate order follows.

---

Memorandum, once civil trials resume, they will be starting on a limited basis only.